BRET A. YAPLE, SBN 195809
2701 DEL PASO ROAD, SUITE 130-245
SACRAMENTO, CA 95835
Tel: (510) 275-4555
Fax: (815) 642-0954

Attorney for Plaintiff,
**SAN FRANCISCO FEDERAL CREDIT UNION**

**FILED**
*San Francisco County Superior Court*

NOV 07 2018

CLERK OF THE COURT
BY: [signature]
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

**SAN FRANCISCO JUDICIAL DISTRICT**

**UNLIMITED CIVIL CASE**

| | |
|---|---|
| SAN FRANCISCO FEDERAL CREDIT UNION<br><br>Plaintiff,<br><br>vs.<br><br>AMIN J COOLEY AKA<br>AMIN JAMAL COOLEY<br>THERESA SAMSOTHA COOLEY<br>AND DOES 1 THROUGH 20, INCLUSIVE<br><br>Defendants. | Case No.: CGC-18-571211<br><br>**COMPLAINT FOR:**<br>**1. POSSESSION OF MOTOR VEHICLE;**<br>**2. BREACH OF SECURED PROMISSORY NOTE;**<br>**3. BREACH OF UNSECURED PROMISSORY NOTE;**<br>**4. BREACH OF UNSECURED PROMISSORY NOTE:**<br>**5. MONEY DUE ON BOOK ACCOUNT. (Principal Demanded $28,703.06 )** |

Plaintiff, SAN FRANCISCO FEDERAL CREDIT UNION, alleges against Defendants, AMIN J COOLEY AKA AMIN JAMAL COOLEY; THERESA SAMSOTHA COOLEY, and does 1 through 10, and each of them as follows:

## GENERAL ALLEGATION

1. Plaintiff, SAN FRANCISCO FEDERAL CREDIT UNION, is duly licensed as a Credit Union and is located in the City and County of San Francisco, California.

2. The true names and capacities of Defendant(s) named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues Defendant(s) by such fictitious names, and

BY FAX

Plaintiff will amend this Complaint to show their true names and capacities when same have been ascertained.

3. The claims sued upon in this complaint are subject to the provisions of California Code of Civil Procedure Section 395(b) because they are based upon loans or extensions of credit intended primarily for personal, family or household use; the claims set forth in this complaint are not subject to the provisions of Section 1812.10 nor 2984.4 of California Civil Code. The above entitled judicial district is the proper venue for the trial of this action because Defendants resides within said judicial district.

**FIRST CAUSE OF ACTION**
**FOR POSSESSION OF MOTOR VEHICLE**
**AGAINST ALL DEFENDANTS**

As and for a first, separate and distinct cause of action, Plaintiff alleges against Defendants, and each of them, as follows:

4. On or about April 19, 2016, Defendants executed that certain promissory note and security agreement entitled "Loan Agreement and Consumer Disclosure Statement", whereby Plaintiff loaned Defendants the principal sum of $32,187.60 subject to all terms and provisions contained in said promissory note. A true and correct copy of said promissory note is attached hereto, marked as Exhibit A, and is incorporated herein by reference.

5. Defendants pledged to Plaintiff as collateral for repayment of said promissory note that certain 2008 Land Rover Range Rover motor vehicle having vehicle identification number SALME15408A264970. At all times relevant hereto, Plaintiff has been duly registered with the California Department of Motor Vehicles as the lienholder/legal owner of said motor vehicle pledged as collateral.

6. Defendants have defaulted in performance pursuant to the terms of the promissory note by failing to make the required installment payments to Plaintiff from and after November 30, 2016 and beyond.

7. As a result of this default of the Defendants, Plaintiff has exercised its right to declare the promissory note in default and its entitled to immediate possession of the motor vehicle

pledged as collateral. Despite demand, Defendants have failed and neglected to surrender the vehicle to Plaintiff.

8. Plaintiff is additionally entitled to an award of reasonable attorney fees pursuant to the term of the aforesaid promissory note.

Wherefore, Plaintiff prays judgment Defendants as to the First Cause of Action as follows:

1. For possession of that certain 2008 Land Rover Range Rover Minivan motor vehicle having vehicle identification number SALME15408A264970;

2. For costs of suit incurred herein;

3. For an award of reasonable attorney fees;

4. For such additional relief as deemed just and proper by the Court.

**SECOND CAUSE OF ACTION**
**FOR BREACH OF SECURED PROMISSORY NOTE**
**AS TO ALL DEFENDANT**

As and for a second, separate and distinct cause of action against Defendants, and each of them, Plaintiff alleges as follows:

9. Plaintiff incorporates herein by reference the General Allegations and the First Cause of Action as if plead hereinafter at length.

10. As a result of the failure of the Defendant to remit the required installment payments to Plaintiff pursuant to the promissory note (Exhibit A), Plaintiff has exercised its right to accelerate the unpaid balance of the promissory note as immediately due and owing in the sum of $26,110.03, plus interest from November 30, 2016 to date of entry of judgment.

11. Despite demand, Defendants have failed and neglected to pay any part of said sum and the whole amount of $26.110.03 is immediately due and owing, plus interest thereon at the maximum allowable legal rate from November 30, 2016 to date of entry of judgment herein.

12. Plaintiff is entitled to an award of reasonable attorney fees.

Wherefore, Plaintiff prays judgment against Defendant on the Second Cause of Action as follows:

1. For the balance due in the amount of $26,110.03 ;

2. For interest thereon at the maximum allowable legal rate from and after November 30, 2016, to date of entry of judgment;

3. For costs of suit incurred herein;

4. For an award of reasonable attorney fees;

5. For such additional relief as deemed just and proper by the Court.

## THIRD CAUSE OF ACTION FOR BREACH OF UNSECURED PROMISSORY NOTE AGAINST ALL DEFENDANTS

As for a third, separate and distinct cause of action against Defendants and each of them, Plaintiff alleges as follows:

13. Plaintiff incorporates herein by reference the General Allegations as if plead hereafter at length.

14. On or about March 31, 2016, Defendants applied for and received from Plaintiff a Shares Account enabling Defendants to access cash and extensions of credit from Plaintiff. In connection with this transaction, a true and correct copy of the Defendants Transaction History, which is attached hereto, marked as Exhibit B, and is incorporated herein by this reference.

15. Defendants accessed the aforesaid Shares Account established with Plaintiff and there is currently due and payable from Defendants to Plaintiff the sum of $1,325.37.

16. Defendants defaulted in remitting the required contractual installment payments to Plaintiff on the aforesaid unsecured line of credit as to all payments that fell due from and after April 28, 2017, and beyond.

17. As a result of the breach in payment by Defendants pursuant to the aforesaid credit line agreement, Plaintiff exercised its option to declare as immediately due and payable the balance of the loan in the amount of $1,325.37.

18. Plaintiff is entitled to an award of interest from April 28, 2017 to date of judgment at the maximum allowable legal rate.

19. Plaintiff is additionally entitled to an award of attorney fees.

Wherefore, Plaintiff prays judgment against Defendants on the Third Cause of Action as follows:

1. For the principal balance of $1,325.37;
2. For interest thereon at the maximum allowable legal rate from and after April 28, 2017;
3. For costs of suit incurred herein:
4. For an award of reasonable attorney fees;
5. For such addition relief as deemed just and proper by the Court.

**FOURTH CAUSE OF ACTION**
**FOR BREACH OF UNSECURED PROMISSORY NOTE**
**AGAINST ALL DEFENDANTS**

As for a fourth, separate and distinct cause of action against Defendants and each of them, Plaintiff alleges as follows:

13. Plaintiff incorporates herein by reference the General Allegations as if plead hereafter at length.

14. On or about April 19, 2016, Defendants applied for and received from Plaintiff a Visa Platinum Account, enabling Defendants to access cash and make purchases on the account. In connection with this transaction, the Defendants Transaction History, a true and correct copy of which is attached hereto, marked as Exhibit C, and is incorporated herein by this reference.

15. Defendants accessed the aforesaid credit line established with Plaintiff and there is currently due and payable from Defendants to Plaintiff the sum of $1,267.66.

16. Defendants defaulted in remitting the required contractual installment payments to Plaintiff on the aforesaid unsecured line of credit as to all payments that fell due from and after March 25, 2017, and beyond.

17. As a result of the breach in payment by Defendants pursuant to the aforesaid credit line agreement, Plaintiff exercised its option to declare as immediately due and payable the balance of the loan in the amount of $1,267.66.

18. Plaintiff is entitled to an award of interest from March 25, 2017 to date of judgment at the maximum allowable legal rate.

19. Plaintiff is additionally entitled to an award of attorney fees.

Wherefore, Plaintiff prays judgment against Defendants on the Fourth Cause of Action as follows:

1. For the principal balance of $1,267.66;

2. For interest thereon at the maximum allowable legal rate from and after March 25, 2017;

3. For costs of suit incurred herein:

4. For an award of reasonable attorney fees;

5. For such addition relief as deemed just and proper by the Court.

## FIFTH CAUSE OF ACTION
## FOR MONEY DUE ON BOOK ACCOUNT
## AGAINST ALL DEFENDANTS

As and for a fifth, separate and distinct cause of action against Defendants, and each of them, Plaintiff alleges as follows:

19. Plaintiff incorporates herein by reference the General Allegations and the First, Second and Third and Fourth Causes of Action as set forth above as if plead hereinafter at length.

20. Within four years last past and prior to the commencement of this action, Defendants and each of them, became indebted to Plaintiff on a book account as defined by California Code of Civil Procedure Section 337(a) for money due in the amount of $28,703.06, for money had and received by Defendants.

21. Despite demand, Defendants have failed to pay said sum to Plaintiff and the whole is immediately due, owing and payable plus interest at the maximum allowable legal rate.

22. Plaintiff is additionally entitled to an award of reasonable attorney fees.

Wherefore, Plaintiff prays judgment against Defendants, as to all caused of action as follows:

1. For the principal sum of $28,703.06
2. For an award of interest at the maximum allowable legal rate;
3. For costs of suit incurred;
4. For an award of reasonable attorney fees;
5. For such other and further relief as deemed just and proper by the Court.

Dated: July 5, 2018

Bret A. Yaple
Attorney for Plaintiff

# EXHIBIT "A"

Dealer Number 38820 Contract Number ______ R.O.S. Number 6D662399 Stock Number 16109

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| [illegible]<br>[redacted]<br>SAN FRANCISCO CA 94116<br>SAN FRANCISCO (415) 341-3600 | | MAJOR MOTOR CARS<br>2032 SANTA MONICA BLVD<br>SANTA MONICA CA, 90404<br>(310) 829-1100 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2009 | LAND ROVER RANGE ROVER | 76512 | SALME15409A264970 | Personal, family or household unless otherwise indicated below.<br>☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 9.390 % | $ 7650.91 (e) | $ 24536.69 | $ 32187.60 (e) | $ 32187.60 (e) |

(e) means an estimate

YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | |
| One Payment of | N/A | |
| One Payment of | 0.00 | |
| 71 | 447.05 | Monthly beginning 05/12/16 |
| | | |
| One final payment | 447.05 | 4/12/22 |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

*ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)*

1. Total Cash Price $ 21500.00 (A)
   - A. Cash Price of Motor Vehicle and Accessories
     - 1. Cash Price Vehicle $ 21500.00
     - 2. Cash Price Accessories $ N/A
     - 3. Other (Nontaxable)
       - Describe ______ $ N/A
       - Describe ______ $ N/A
   - B. Document Processing Charge (not a governmental fee) $ 85.00 (B)
   - C. Emissions Testing Charge (not a governmental fee) $ 50.00 (C)
   - D. (Optional) Theft Deterrent Device (to whom paid) ______ $ N/A (D)
   - E. (Optional) Theft Deterrent Device (to whom paid) ______ $ N/A (E)
   - F. (Optional) Theft Deterrent Device (to whom paid) ______ $ N/A (F)
   - G. (Optional) Surface Protection Product (to whom paid) ______ $ N/A (G)
   - H. (Optional) Surface Protection Product (to whom paid) ______ $ N/A (H)
   - I. EV Charging Station (to whom paid) ______ $ N/A (I)
   - J. Sales Tax (on taxable items in A through I) $ 1890.44 (J)
   - K. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (to whom paid) ______ $ N/A (K)
   - L. (Optional) Service Contract (to whom paid) ______ $ N/A (L)

## STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

### Vehicle Insurance

| | | Term | Premium |
|---|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | | ___ Mos. | $ N/A |
| $ N/A Ded. Collision | | ___ Mos. | $ N/A |
| Bodily Injury | $ N/A Limits | ___ Mos. | $ N/A |
| Property Damage | $ N/A Limits | ___ Mos. | $ N/A |
| Medical | N/A | ___ Mos. | $ N/A |
| | N/A | ___ Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X [signature]

Co-Buyer X

Seller X [signature]

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Application for Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. | | $ N/A |
| Credit Disability | N/A Mos. | | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A (M) |

Insurance Company Name N/A

Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages

$ N/A (G)

Total Downpayment (C through G) $ 0.00 (6)

(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1G above)

7. Amount Financed (5 less 6) $ 24536.69 (7)

Term N/A Mos. or N/A Miles

1P Company

Term N/A Mos. or N/A Miles

Buyer X

SELLER ASSISTED LOAN

BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: N/A

Amount $ N/A Finance Charge $ N/A

Total $ N/A Payable in N/A

Installments of $ N/A $ N/A

from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable:

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X

Co-Buyer Signs X

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X Buyer

X Co-Buyer

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before ______, Year ____. SELLER'S INITIALS ______

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:

YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.

FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X ______ X ______

Trade-In Payoff Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund.

Buyer Signature X ______ Co-Buyer Signature X ______

**Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.**

If you have a complaint concerning this sale, you should try to resolve it with the seller.

Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.

After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X ______ Co-Buyer Signature X ______

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X ______ Date 04/12/2016 Co-Buyer Signature X ______ Date 04/12/2016

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X ______ Address ______

GUARANTY: To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X ______ Date 04/12/2016 Guarantor X ______ Date 04/12/20[illegible]

Address ______ Address ______

Seller Signs MAJOR MOTOR CARS Date 04/12/2016 Peter Yousef Title GM